

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bascom Giles
Commissioner of the General Land Office
Austin, Texas

Dear Mr. Giles:

Opinion No. O-1897
Re: Right of reinstatement
under Article 5326 of
R. C. S. 1925, by original
forfeiting purchaser of
school land after subse-
quent re-sale to another
and forfeiture of second
sale.

You have requested a reconsideration by this
Department of our Opinion No. O-760, written May 9,
1939, and the supplemental opinion thereto of May 16,
1939, both opinions addressed to you.

In your written request for a reconsideration
of Opinion O-760, you make the following statement of
facts with reference to the particular situation now
confronting you:

On July 6, 1900, Section 78, Block 21,
Collingsworth County, was awarded by the State
of Texas to R. W. Criswald at a price of $1.00
per acre with a dry grazing classification.
After a forfeiture and reinstatement of such
sale in 1902, the southeast 1/4 of Section 78
was, on November 28, 1908, conveyed by R. W.
Criswald to H. C. Wells, and such southeast
1/4 of said section was placed in a separate
account in the Land Office.

On July 1, 1927, the sale covering the
southeast 1/4 of Section 78 was forfeited

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

for non-payment of interest. Thereafter, on
October 2, 1930, the southeast 1/4 of section
78 was awarded by the State to L. A. Casey
at a price of $10.40 per acre, under a mineral
and grazing classification.

On October 13, 1939, the sale to Casey was
forfeited for non-payment of interest, and said
tract was put up for sale on January 2, 1940.
A. T. Smith was the high bidder at such sale
with a bid of $10.30 per acre, but all bids were
rejected by the School Land Board.

On January 20, 1940, Walter Darlington, Jr.
made application to reinstate said southeast 1/4
of section 78 under the original sale to R. W.
Griswald and tendered the sum of $95.15, which
amount is sufficient to reinstate the account
under that sale, if the right to such reinstate-
ment exists.

In this connection, we assume that Walter Darling-
ton, Jr. is now the legal owner of such rights as were
owned by H. C. Wells at the time of the 1927 forfeiture.
If this is not so, Darlington, of course, would have no
right of reinstatement as he would be an entire stranger
to the title to this land and to any rights therein.

Your request for an opinion then proceeds as
follows:

"This office is in receipt of two opinions
from your Department. Opinion O-760, dated May
9, 1939, and supplemental opinion, O-760, dated
May 16, 1939, both of which hold, in effect:
'that the mere right of reinstatement without
being exercised by making a written request for
reinstatement and paying the money into the
treasury as required by Article 5326, is not
sufficient right as will preclude reinstatement
of the original forfeiting owner'. These
opinions would allow reinstatement in the in-
stance set out above of $1.00 per acre sale
bearing a dry grazing classification and would
deprive the State of the benefits to be gained

Honorable Bascom Giles, Page 3

under a possible reinstatement under the
L. A. Casey sale, which was for $10.40
per acre and bore a mineral classification.

"Much of the Public School Land, owned
by the State at the present time, has been
purchased and forfeited at least twice - the
first sale bearing a dry grazing classifica-
tion and the later sale bearing a mineral
classification. To allow reinstatement under
the first sale would deprive the State of any
mineral interest in such land. It would have
a mineral reservation under the later sale.

"It has been the practice of this office
for many years to hold that the last sale only
was subject to reinstatement and that an out-
standing right of reinstatement precluded an
original forfeiting owner from having his sale
reinstated. Many people, in former years,
have been informed along that line by this
office and have acquiesced in that interpre-
tation of the law.

"Since neither of the above mentioned
opinions appear to be conference opinions
and since it is of paramount importance to
the State and to the Public School Fund to
determine whether the right to reinstate a
prior forfeited sale exists in situations
as set out above, I am respectfully request-
ing that you give me a conference opinion on
the following question:

"Is the right of reinstatement held
by L. A. Casey a 'vested right in a
third person' which would preclude
the reinstatement of the sale of the
SE 1/4 of Sec. 78, Blk.21, by the re-
cord owner under the original sale to
R. W. Griswald?"

Honorable Bascom Giles, Page 4

Further investigation of the Land Office records discloses the fact that more than one million acres of public school lands have heretofore been twice sold and twice forfeited, thus placing such land in the same category as the particular 160 acres inquired about by you insofar as the right of reinstatement by the original purchaser notwithstanding a second sale and second forfeiture is concerned. The records of the General Land Office further reveal that the original sales of several million acres of public land have heretofore been once forfeited, and such lands sold a second time. If, in the future, the second sales of such lands are forfeited for non-payment of interest or from other causes, all of those several million acres will be placed in the same category as the 160 acres inquired about by you with respect to the right of the original purchaser to reinstate the original sale notwithstanding the second sale.

It is further shown by the records of the General Land Office that in the great majority of cases the second sale, after the first forfeiture, was made by the State at a higher price than the first sale, and that the second sale was often made with a mineral classification, thus reserving to the State an interest in the minerals, whereas the original sales on much of the public school lands were made under a dry grazing, non-mineral classification, without any mineral reservation to the State.

These facts are alluded to in order to make clear the loss which will necessarily be suffered by the State from a holding that the right of reinstatement under a forfeiture of a second sale does not bar the right of reinstatement under a first sale. The loss resulting to the State from such a holding results from the fact that it has been decided by the Texas courts that the reinstatement statute, Article 5326, R. C. S. 1925, gives to the forfeiting owner, if rights of third parties have not intervened, the right of reinstatement at the same price and with the same mineral reservation as was contained in the original sale to him. See Magnolia Petroleum Co. v. Walker, 125 Tex. 430, 83 S. W. (2) 929.

The foregoing lengthy statement has been made in order to make clear the scope and importance of the question involved.

Honorable Bascom Giles, Page 5


Your inquiry is as to whether or not an outstanding right of reinstatement (that incident to the second sale) is such a right as will operate to bar the right of reinstatement under the first sale.

Article 5326, R. C. S. 1925, the Reinstatement Statute here involved, provides as follows:

"If any portion of the interest on any sale should not be paid when due, the land shall be subject to forfeiture by the Commissioner entering on the wrapper containing the papers 'Land Forfeited', or words of similar import, with the date of such action and sign it officially, and thereupon the land and all payments shall be forfeited to the State, and the lands shall be offered for sale on a subsequent sale date. In any case where lands have been forfeited to the State for the non-payment of interest, the purchasers, or their vendees, may have their claims reinstated on their written request, by paying into the Treasury the full amount of interest due on such claim up to the date of reinstatement, provided that no rights of third persons may have intervened. In all such cases, the original obligations and penalties shall thereby become as binding as if no forfeiture had ever occurred. If any purchaser shall die, his heirs or legal representatives shall have one year in which to make payment after the first day of November next after such death. Nothing in this article shall inhibit the State from instituting such legal proceedings as may be necessary to enforce such forfeiture, or to recover the full amount of the interest and such penalties as may be due the State at the time such forfeiture occurred or to protect any other right to such land." (Underscoring ours).

The answer to your question depends upon the construction and effect to be given to that portion of

Article 5326 which provides for reinstatement of forfeited sales "provided that no rights of third persons may have intervened." If, under the fact situation you have presented to us, the outstanding right of reinstatement hold by the second purchaser, L. A. Casey, is an "intervening right" as meant by Article 5326, then such right will operate as a bar to a reinstatement of the first sale. If not, the first sale is subject to reinstatement.

In Gulf Production Company v. State, 231 S. W. 124 (Writ of Error Ref.), the San Antonio Court of Civil Appeals in referring to the "intervening rights" provided for in Article 5326 stated that by such language the Legislature meant "such rights of third parties as constitute a present existing bar to reinstatement - an existing vested right, enforceable at the time by the party owning such right." However, an analysis of the facts involved in that case discloses that the second sale which was there claimed to be a bar to the right of reinstatement of the first sale was a sale made upon condition of settlement, which condition had not been performed. Further, the second purchaser had actually abandoned the land and made known his abandonment to the Land Commissioner. In such circumstances no right of reinstatement existed in favor of the second purchaser, as his failure to comply with the settlement condition of his purchase wholly invalidated the sale to him and put an end to his rights in the land. This conclusion is affirmed in the opinion in the Gulf case. Therefore, as no right of reinstatement existed in favor of the second purchaser, his sale having been voided, there was no intervening right which would operate to bar a reinstatement of the first sale to Kidd. In making a finding and conclusion which was necessary to reach the result arrived at by the Court of Civil Appeals, in Gulf v. State case, supra, the Court at page 134 of the report significantly made this statement with respect to the character of the right of reinstatement owned by a forfeiting purchaser:

"It is true, also, as held in Lawless v. Wright, that the State of Texas at that time was invested with the title to the land, and the right to resell the land, subject, however, and always to the right of Kidd or his vendees to reinstate the original sale at any time in the absence of intervening rights of third parties. And just there is precisely the interest that Bellamy owned at the

> <u>time of the transfer to Lewis. And that was a vested</u>
> <u>right which no statute or act of the Land Commissioner</u>
> <u>could take away from him."</u> (Underscoring ours)

Thus, it is found that the Court in Gulf Production Co. v. State expressly held that the right of reinstatement owned by a forfeiting purchaser is a <u>vested right.</u>

In Cruzan v. Walker, 119 Tex. 189, 26 S. W. (2) 905, the Supreme Court in defining the "intervening rights" meant by Article 5326 stated that such rights must be "valid, existent and legally enforceable when written request for reinstatement is made. . ." However, the only question determined by the Court was whether or not the rights of a permittee whose permit to prospect for oil and gas had been canceled and forfeited, was an intervening right within the meaning of Article 5326. The Court held that the rights of the forfeiting oil and gas permittee did not bar a reinstatement of first sale made subsequent to the forfeiture of the oil and gas permit.

The Cruzan case is distinguishable from the situation presented by your request in this respect; the oil and gas permittee in the Cruzan case had no right of reinstatement after forfeiture of his permit for failure to begin development within the time fixed by statute. All of his rights ended completely and finally with forfeiture of his permit, and such rights were not subject to reinstatement. Whereas, under the facts related by you, the second purchaser, Casey, by virtue of Article 5326, does have the right to reinstate his forfeited sale. This right, in Gulf Production Co. v. State, supra, was stated to be a "vested right."

In Freels v. Walker, 120 Tex. 291, 26 S. W. (2) 627, it was held that the right accruing from a mere filing of an application to prospect for oil and gas with the County Clerk did not constitute such an intervening right as was meant by Article 5326. Practically the same language as is found in the Gulf case and the Cruzan case, supra, was used by the court in defining the character of right meant by the term "intervening right" in Article 5326. As pointed out in Freels v. Walker, the mere filing of an application did not give rise to a vested right in the applicant because the Land Commissioner was vested by statute with some discretion in determining whether or not to issue a permit in the event an application for permit should later be filed with the Land Commissioner.

We find no cases other than Culf v. State, supra, in which there has been discussed the question of whether or not the right of reinstatement under Article 5326 constitutes an enforceable vested right. In view of the fact that the Supreme Court has twice cited with approval the Culf v. State decision, we feel constrained to follow the language in such decision which holds that the right of reinstatement is a vested right.

You are, therefore, advised that, in our opinion, the right of reinstatement existing in favor of the second purchaser (here I. A. Casey) is an enforceable, vested right within the meaning of the above quoted decision, and that such right of reinstatement, so long as it is outstanding, is an "intervening right" within the meaning of Article 5326, which operates to bar a reinstatement of the first forfeited sale.

We realize, and here frankly state, that some doubt exists as to the correctness of this holding in view of the broad language used in the above cited cases in defining the character of right necessary to constitute an intervening right as that term is used in the statute. It has long been a rule of the Attorney General's Department, however, that when doubtful questions are presented to this department with respect to the rights of the State in its public lands, such doubtful questions shall be determined by this department in favor of the State. This rule, and the reason which forms its basis, are well stated in an opinion of this department written in 1932 by then Assistant Attorney General R. W. Yarborough, Opinions of Attorney General, 1930-32, page 230. We quote from that opinion as follows:

"This rule has been followed ever since the administration of the Honorable C. M. Cureton as Attorney General, and is most briefly stated in an opinion written by the Honorable E. F. Smith, former Assistant Attorney General, and approved by the Honorable Chief Justice Cureton, then Attorney General. The statement is as follows:

'If the State owns the minerals in this land, such ownership may be of little

or great value, but if we advise that this ownership be surrendered on the st_te of facts presented and our advice should be wrong, our error can never be corrected, whereas if our advice not to surrender the rights of the State is wrong, the vendees of Mr. Gibson can have our er.or corrected by proper legal proceedings.

'In all controversies involving the rights of the State, it is the duty and likewise the policy of the Attorney General's Department to decide all substantial doubts in favor of the State for the reasons just mentioned.'"

We feel that the foregoing is a wholesome rule and that it properly may be here applied. If we hold that a first sale may be reinstated, notwithstanding the existing right of reinstatement in favor of a second purchaser, the question will possibly never be settled by an opinion of the Supreme Court. On the other hand, if we hold that the right of reinstatement of a second purchase bars the reinstatement of the first purchase, the question can be tested on mandamus proceedings in the Supreme Court, and a direct judicial ascertainment can thus be obtained.

Further, we feel bound to give great weight to the uniform departmental construction which the General Land Office has given to this statute for many years. This is a matter which directly involves the administration of the affairs of the Land Office and a long settled practice and construction of the Land Office concerning a matter which it is charged to administer should not be overturned by this department unless the construction and practice of the Land Office is clearly wrong. This we do not find to be the case.

Accordingly, our opinion No. O-780 and our supplemental opinion of May 16, 1939, both addressed to you, are upon reconsideration withdrawn, and you are now advised that, in our opinion, the outstanding right of reinstatement owned by L. A. Casey, the second purchaser of the land in question, is a bar to the reinstatement of the forfeited first sale.

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE

APPROVED APR 13, 1940

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED THIS OPINION OPINION COMMITTEE APPROVED BY